

**SO ORDERED.**

**SIGNED this 06 day of April, 2006.**

_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: ) | | |
| JOHN HOWARD FITTELL and ) | | |
| VALERIE POIDEVIN FITTELL ) | Case No. 05-40854 | |
| ) | Chapter 7 | |
| Debtors. ) | | |
| _____) | | |
| ) | | |
| ESTATE OF MICHAEL JOHN MAHER ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Adversary No. 05-7063 | |
| ) | | |
| JOHN HOWARD FITTELL and ) | | |
| VALERIE POIDEVIN FITTELL ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

**MEMORANDUM ORDER AND OPINION
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND SETTING DEADLINE FOR FILING JURISDICTIONAL MOTION TO DISMISS**

This matter is before the Court on Plaintiff's Motion for Summary Judgment.[1] This matter constitutes a core proceeding, and the Court has jurisdiction to decide it.[2]

I. **FINDINGS OF FACT**

The facts of this case, at least insofar as they relate to the limited issues raised by Plaintiff's Motion for Summary Judgment,[3] are not in dispute. Defendants, who are the Debtors in this Chapter 7 bankruptcy proceeding, were appointed executors of the estate of Michael John Maher, Case No. 2002 PR 131 in the District Court of Douglas County, Kansas. During their service as executors of the estate, Defendants paid themselves executor fees totaling $9,203.25 without obtaining prior approval from the probate court. Defendants relied upon advice and counsel from David J. Brown, the attorney for the estate at the time the advice was given, who told Defendants that they had authority to pay themselves executor fees without prior court approval because the case was brought under the Kansas Simplified Estates Act. Defendants say Brown told them that the fees would be formally approved at the time of the final accounting.[4]

There are three heirs of the Michael Maher estate; they are Angus Maher, Nicholas Maher and Jessica Maher. If the Court interprets the facts in favor of the nonmovants, as it must in ruling on a summary judgment motion, Defendants periodically met with these beneficiaries, advised them

---

[1] Doc. 30.

[2] 28 U.S.C. §§ 157(b)(2)(I) and 1334.

[3] Defendants raise, in paragraph 7.2(1) of the final Pretrial Order entered February 22, 2006 (Doc. 32), that the Estate does not have standing to bring this action because it is not the real party in interest, and that the time to amend the Complaint to name the proper party has expired. Defendants do not raise this issue in response to this Motion, nor have they filed a Motion to Dismiss for lack of jurisdiction by the deadline required by the Pretrial Order. If Defendants intend to pursue this theory, they shall file a Motion to Dismiss on that basis, plus a Memorandum in Support, no later than **April 23, 2006**. The reply, if any, shall be filed by **May 7, 2006.**

[4] This finding of fact was contained in Defendants' Response to Plaintiff's Motion for Summary Judgment, and Plaintiff made no reply to that response. For that reason, the additional facts contained in Defendants' response are deemed admitted pursuant to D. Kan. Rule 56.1(b)(2).

of the fees that they proposed to charge, and received either verbal and/or written agreements from each of the heirs allowing them to charge those fees. Defendants wrote to each of the three beneficiaries, to Christine Graham who was the attorney for Jessica Maher, and to David Brown, the attorney for the estate, with questions pertaining to the disbursement of property. Defendants also kept meticulous time records of all time spent on behalf of the Michael Maher estate (hereafter Estate). By letter dated November 17, 2003, David Brown advised Defendants that Christine Graham was aware that Defendants had paid themselves executor fees. There is nothing in the record before the Court indicating what, if anything, was done to protest the receipt of these fees by the heirs until this Adversary Proceeding was filed on June 16, 2005, some nineteen months later.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[5] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[6] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[7] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[8]

---

[5] Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

[6] *Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir. 2004); *Loper v. Loper (In re Loper)*, 329 B.R. 704, 706 (10th Cir. BAP 2005).

[7] *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[8] *Id.* (citing *Anderson,* 477 U.S. at 248).

3

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[9] In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[10]

If the movant carries this initial burden, the nonmovant who would bear the burden of persuasion at trial may not simply rest upon his pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[11] To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12] Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

## III. ANALYSIS

Plaintiff's motion for summary judgment is based solely on the theory that Defendants' payment of executor fees to themselves without prior court approval constitutes conversion, as a

---

[9]*Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[10]*Id.* (citing *Celotex,* 477 U.S. at 325).

[11]*Id.* (citing Fed. R. Civ. P. 56(e)).

[12]*Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 675 (10th Cir. 2002).

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

4

matter of law, and thus requires an award of double damages under Kansas statute.[14] In addition, Plaintiff contends that the damages sought are for a breach of fiduciary duty, and as such are non-dischargeable under 11 U.S.C. § 523(a)(4) and (6).

The Kansas Probate Code authorizes the payment of expenses and compensation to an executor of an estate upon court approval.[15] If Defendants converted the probate estate's funds to their own use without authorization, while acting in a fiduciary capacity as executors, K.S.A. 59-1704 requires the court to order double damages for such conversion. The Estate relies on *Matter of Conservatorship of Marcotte*[16] for the proposition that application of K.S.A. 59-1704's double damage remedy is mandated under these facts. This Court disagrees.

In *Marcotte*, the co-conservators for Mr. Marcotte made various gifts and paid various expenses to third parties that were not "for the support, maintenance or education" of the conservatee. In holding that the double damage penalties of K.S.A. 59-1704 applied, the court stated that "[u]nquestionably, these payments were not made for the benefit of the conservatee <u>nor do they represent necessary expenses of the conservatorship</u>. In making these payments, the co-conservators violated the statutory duty imposed on them by K.S.A. 59-3019."[17] In this case, Debtors contend, and Plaintiff never refutes, that the funds taken by Debtors represented time expended in doing tasks

---

[14]K.S.A. 59-1704 provides that "If any person embezzles or converts to his or her own use any of the personal property of a decedent or conservatee, such person shall be liable for double the value of the property so embezzled or converted."

[15]*See* K.S.A. 59-1717 ("At any time during administration the fiduciary may apply to the court for an allowance upon his or her compensation and upon attorneys' fees.").

[16]243 Kan. 190 (1988).

[17]*Id*. at 198 (emphasis added).

5

for the benefit of the estate, and represent necessary expenses of the estate.[18] Accordingly, the facts of this case are readily distinguishable from those in *Marcotte*.

In addition, Defendants contend, and Plaintiff does not dispute, that the probate case was opened under the Kansas Simplified Estates Act (the "Act").[19] Under this Act, the executor of an estate has a duty to pay claims of creditors,[20] which Debtors argue includes the payment of "the appropriate and necessary costs and expenses of administration . . . ."[21] Similarly, the Act specifically provides that "[p]ayment of creditors' claims . . . shall not require court supervision."[22] The Act, at K.S.A. 59-3205, goes on to provide that "[a]fter an estate has been opened under the Kansas simplified estates act . . . no further court supervision is necessary or required until the court orders the estate closed . . . ."[23]

K.S.A. 59-3205, which deals in part with closing estates opened under the Kansas Simplified Estates Act, provides that after the time for filing claims has expired and all other described deadlines have expired, the court may order the estate closed as provided in K.S.A. 59-2247 and 59-2259 of the Probate Code. Neither of those statutes discuss payment of reasonable costs and expenses of administration. K.S.A. 59-1717 provides that fiduciaries shall be allowed reasonable

---

[18] A review of the time records attached to Defendant's pleadings show these Debtors, as executors, cleaning trash out of the decedent's home, preparing the house for sale, dealing with utilities, and the myriad duties that the heirs would have either had to do themselves, or pay someone else to do, if Debtors had not done them. Although Debtors don't specifically make a quantum meruit argument, it seems to the Court that their time records might support such an argument. That said, the Court makes no finding about the reasonableness of the time spent on any particular task. That will be a matter for trial.

[19] K.S.A. 59-3201-3206.

[20] K.S.A. 59-3204(a).

[21] K.S.A. 59-1301.

[22] K.S.A. 59-3204(b).

[23] K.S.A. 59-3205.

6

and necessary costs and expenses, and further provides that at any time during administration the fiduciary may apply for those fees.

The undisputed facts before this Court—undisputed because Plaintiff did not controvert them by replying to Defendants' response to their summary judgment motion—are that the heirs of this estate were advised of the rate of compensation Defendants would seek for serving as executors, and actually approved that rate, that Defendants meticulously kept track of their reasonable expenses as executors, that the estate's attorney advised Defendants that they could pay their reasonable expenses and costs without prior court order, which payment would ultimately be subject to final court approval, and that the heirs knew, at least by November 2003, of the executors' decision to pay their reasonable costs and expenses of administration when they did so, and did nothing to immediately protest that payment, thus ratifying Defendant's actions.

Under those facts, this Court cannot find, as a matter of law, that there was "embezzlement" or "conversion" of estate assets, as required by K.S.A. 59-1704. Conversion is the unauthorized act that deprives an owner of his property permanently or for an indefinite period of time.[24] By definition, if the act was authorized by the owners—ultimately here the heirs of the Maher estate—then the act of paying reasonable and necessary expenses of administration cannot be conversion. Similarly, embezzlement is the use or conversion of money which the wrongdoer acquired lawfully, by reason of some office or employment or position of trust.[25] Again, since the undisputed facts are that the heirs consented to the fees being paid, there can be no embezzlement.

---

[24]Black's Law Dictionary (5th ed.1979).

[25]*Id*.

7

A somewhat similar Kansas case is instructive. In *Matter of Estate of Harrison*,[26] the administrator paid a claim without formally waiting for the claimant to file a claim with the estate. The court, relying on *Young v. Scott*,[27] held that the "technically irregular payment of the claim did not substantially harm [the heirs] to the extent necessary to require us to disallow credit for the payment."[28] Accordingly, at trial, Plaintiff should also be prepared to show that the heirs have been substantially prejudiced by Defendants' failure to first seek authority to pay their expenses, and that those expenses were not reasonable and necessary. Obviously, Plaintiff will also be required to show that Defendant's payment of these executor fees meets the standards required for non-dischargeability under 11 U.S.C. § 523(a)(4) or (6).

## IV. CONCLUSION

The Court finds that Plaintiff's Motion for Summary Judgment must be denied. The sole basis for the motion is that Defendants, while acting as executors of the probate estate, failed to obtain court approval before paying any of their executor fees. The Court finds that because Plaintiff has not established either that there was conversion or embezzlement, required by K.S.A. 59-1704, or that the estate was substantially prejudiced by the payment, the Court must deny Plaintiff's Motion.

In light of the Court's ruling, and the fact there are no other pending dispositive motions, this matter will be set for trial on this Court's stacked docket **May 17-18, 2006.** At that time, Plaintiff will have the opportunity to prove the claims it has set forth in the Pretrial Order, to-wit, that

---

[26] 25 Kan. App. 2d 661 (1998).

[27] 59 Kan. 621 (1898) (holding that administrator's improper acts must substantially prejudice the estate and not be a mere technical illegality).

[28] 25 Kan.App.2d at 1095.

8

Debtors were not entitled to receipt of $9,203.25 as reasonable and necessary expenses of administration, that their receipt of such money is a violation of their fiduciary duty such that they must repay that amount (or double that amount if they are able to prove conversion or embezzlement as required by K.S.A. 59-1704, and that the doubled amount is not a penalty that could be dischargeable), and, finally, that such debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) or (6).

**IT IS, THEREFORE, BY THE COURT ORDERED** that Plaintiffs' Motion for Summary Judgment is denied.

**IT IS FURTHER ORDERED** that if Defendants intend to pursue the theory that the Estate of Maher is not the proper party in interest, and that it is too late to amend the Complaint to name the proper party, they shall file a Motion to Dismiss on that basis, plus a Memorandum in Support, no later than **April 23, 2006**. Plaintiff's reply, if any, shall be filed by **May 7, 2006.**

**IT IS FURTHER ORDERED** that this matter is set for trial on this Court's stacked evidentiary docket **May 17-18, 2006.**

###

9